UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-230-RGJ

ALLAN M. JOSEPHSON                                                                                           Plaintiff

v.

NEELI BENDAPUDI, ET AL.                                                                                   Defendants

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Neeli Bendapudi, Gregory C. Postel, Beth A. Boehm, Toni Ganzel, Kimberly A. Boland, Charles R. Woods, Jennifer F. Le, Bryan D. Carter, and William D. Lohr (collectively, "Defendants") move to dismiss Dr. Allan M. Josephson's ("Plaintiff's") amended complaint. [DE 20]. Briefing is complete. [DE 21; DE 22]. For the reasons below, Defendant's Motion is **DENIED**.

### I.  BACKGROUND

In January 2003, Plaintiff, a board-certified psychiatrist, joined the faculty of the University of Louisville as a Professor of Psychiatry and the Chief of the Division of Child and Adolescent Psychiatry and Psychology ("Division"). [DE 19 at 217]. During his time as Chief, Plaintiff added new faculty to the Division, enhanced its national profile, balanced its budget, expanded programing, and increased the number of patients treated. *Id.* at 218. The Division "flourished," as did Plaintiff. *Id.* at 217. "In light of these accomplishments, [Plaintiff] received perfect scores—4.0 across the board—in his 2014, 2015, and 2016 annual reviews." *Id.* at 218.

In 2016 and 2017, Plaintiff served "as an expert witness in several . . . cases involving issues of gender dysphoria in children and adolescents." *Id.* at 221. In October 2017, he participated in a panel discussion at the Heritage Foundation, "'the nation's largest, most broadly-

1

supported conservative research and educational institution.'" *Id.* at 222. In his role as an expert witness and a panel participant, Plaintiff expressed his "conservative, developmentally-based approach to treating youth with gender dysphoria." *Id.* at 221. As Plaintiff sees it, "[y]outh experiencing gender dysphoria must always be affirmed as a person, but this does not mean that parents or medical professionals should affirm their desire to become a member of the opposite sex before the issues are explored." *Id.*

Plaintiff alleges that Defendants retaliated against him for expressing these views. *Id.* After demoting him from his role as Chief in November 2017, "Defendants continued to retaliate against [him] . . . [for over a year] . . . by subjecting him to a hostile, humiliating work environment" by "giv[ing] him demeaning assignments . . . and . . . diminish[ing] his responsibilities" in ways unrelated to his demotion. [*Id.* at 240; DE 21 at 613]. In February 2019, Plaintiff learned that the University of Louisville was not renewing his contract. [DE 19 at 244].

In March 2019, Plaintiff brought this 42 U.S.C. § 1983 suit against Defendants, alleging violation of his First and Fourteenth Amendment rights by, among other things, retaliating against him for expressing his views on gender dysphoria. *Id.* at 249. Defendants moved to dismiss Plaintiff's Complaint. [DE 14]. After this motion to dismiss was filed, Plaintiff timely amended his complaint [DE 19], and Defendants filed the present Motion [DE 20].

## II.  **STANDARD**

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all

reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

"The statute of limitations is an affirmative defense . . . and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). As a result, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.*

### III. <u>DISCUSSION</u>

Defendants argue that many of the allegedly discriminatory acts that support Plaintiff's hostile work environment occurred outside the one-year statute of limitations and are thus time-barred. [DE 22 at 622 ("[Plaintiff] now attempts to circumvent the statute of limitations by characterizing his claim as involving a 'hostile work environment' . . . In turn, he seeks to invoke the continuing violation theory to avoid the limitations period altogether so that he can sue over actions allegedly taken more than one year prior to the filing of this lawsuit")]. Defendants also argue that Plaintiff's hostile work environment claim must be dismissed because he has failed to plead that "each Government official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 625-626 (quoting *Ashcroft*, 556 U.S. at 676) (internal quotation marks omitted).

In response, Plaintiff asserts he has sufficiently pled "facts showing" that all "Defendants created a hostile environment." [DE 21 at 614]. Moreover, although some of Defendants' acts that contributed to the hostile work environment occurred outside the one-year statute of limitations, Plaintiff contends that they are still actionable under the continuing violations doctrine. *Id.* at 615.

The Sixth Circuit has recognized the "continuing violation" doctrine as an exception to the one-year statute of limitations in § 1983 actions. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). "When a continuing violation is found, 'a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.'" *Id.* (quoting *Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 408 (6th Cir. 1999)). There are two types of continuing violations: 1) "serial violations consisting of a series of discriminatory or

retaliatory acts" and 2) "those identified with a longstanding and demonstrable policy of discrimination." *Phifer v. City of Grand Rapids, Michigan*, 657 F. Supp. 2d 867, 873 (W.D. Mich. 2009) (internal quotation marks and citation omitted). "The paradigmatic example" of the first type "is a hostile work environment claim, where the cumulative effect of the acts manifests over time and not at one particular moment." *Click v. Thompson*, 926 F. Supp. 2d 972, 974 (E.D. Ky. 2013); *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' . . . Provided that an act contributing to the claim occurs *within the filing period*, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability") (emphasis added).

Plaintiff has alleged a viable hostile work environment claim against all Defendants. Plaintiff has broadly alleged that "[f]or over a year after the demotion, Defendants continued to retaliate against Plaintiff by subjecting him to a hostile, humiliating work environment, which manifested itself in numerous ways." [DE 19 at 240]. Plaintiff has also specifically alleged two incidents within the one-year "filing period." *Morgan*, 536 U.S. at 117. In July 2018, "[Plaintiff inquired] how [Defendants Le, Carter, and Lohr] had been selected to lead the Division after his demotion and pointed out that they needed to give more attention to the Bingham Clinic board . . . . Five days later, Defendants Le, Lohr, and Carter responded by sending [Plaintiff] a letter demanding that he again increase his clinical hours, for both outpatient and tele-psychiatry patients." [DE 19 at 242]. And in August 2018, Defendant Le ["cut[] [Plaintiff's] funds for academic travel, dues, and books by over 70%," "reduced him to the base travel budget generally reserved only for junior faculty members," and thereby forced him to "curtail his presence at

national meetings and conferences and . . . prevent[ed] him from presenting papers he planned to present at such meetings." *Id.* at 243.

Plaintiff has alleged several discriminatory actions taken by Defendants that are not affirmatively time-barred. Plaintiff has alleged that, between November 2017 and November 2018, Defendants prohibited him from attending division meetings, isolated him, stripped him of leadership activities, his non-clinical duties, teaching and mentoring duties, and assigned him clinical work given only to junior faculty. *Id.* at 240; *See Arya v. Taxak*, 2017 WL 5560411, at *9–10 (W.D. Ky. Nov. 17, 2017) (finding that claims should not be dismissed when they are "not accompanied by dates that could cause them to be barred by the statute of limitations"). A tenured professor with more than thirty years of experience, Plaintiff alleged that, after expressing his views, Defendants "humiliated" him by treating him like a junior professor. *Id.* Defendants accused him of being "childish, narcissistic, and flippant," and accused him of "lying, being deceptive, and withholding information." *Id.* at 241-242. As result of this discriminatory conduct, Defendants "rendered it impossible for him to maintain his national leadership role in his profession or to continue any of the academic projects he had planned." *Id.* at 242. Because Plaintiff has plausibly alleged at least one act within the statute of limitations, "the entire time period of the hostile environment may be considered . . . for the purposes of determining liability." *Morgan*, 536 U.S. at 117. As a result, the Court will not dismiss his hostile work environment claim.

Defendants argue that these alleged discriminatory acts are not part of a continuing violation but are effects of Plaintiff's demotion, and as such, they are time-barred and not actionable. [DE 20-1 at 341 ("The Court should dismiss Josephson's claims to the extent they are based upon the alleged effects of the November 2017 demotion")]. But, the November 28, 2017

letter [DE 19-7] demoting him tells a different story. In the demotion letter, Defendant Woods highlights how Plaintiff's role in the Division will change after the "transition" from Chief to a faculty member in a non-leadership role. *Id.* at 319. Woods details the "effects" of the demotion by listing changes that will occur because of it.[1] The demotion letter does not detail a single one of the discriminatory actions Defendants allegedly took against Plaintiff between November 2017 and November 2018. If these adverse employment actions were merely "effects" of his demotion, then they would be in the demotion letter. Because they are not, it is rational to infer that they were not "effects," but continuing violations.

Finally, in their Reply, Defendants argue for the first time that Plaintiff's hostile work environment claim fails as a matter of law because he did not plead "'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"

---

[1] "As part of this transition, carefully review the following:
- You will remain a member of the Division.
- You may retain your current academic office space through the end of this academic year. I will advocate to leave your salary intact through the end of this academic year, in terms of the Division Chief supplement, but I cannot promise that the latter will be possible or sustainable after June 30, 2018.
- You will need to add a half day of clinical work per week when not on inpatient duty, starting in January.
- As a faculty member in the Division, you will report to the Interim Division Chief for Child Psychiatry
- This transition of division leadership will be announced at the Department faculty meeting on December 4, 2017.
- Please compile a list of 5 to 10 items that you view as key accomplishments in your role as Division Chief, including both personal and Divisional accomplishments, and send this to Ruby Keith by Thursday, November 30, 2017.
- The Bingham Board meeting planned for Wednesday, November 29, 2017, will be cancelled.
- You continue to have a duty to any gender dysphoria patients that you may see (and their families) to apprise them of available processes of care that differ from your own.
- You continue to have a duty to acknowledge to trainees when you are knowingly espousing approaches and views that differ from the official curricula for those trainees (and I know you have asked for a copy of the School of Medicine's medical student curriculum content on gender dysphoria for this purpose)."

[DE 19-7 at 319].

[DE 22 at 625–26 (quoting *Ashcroft*, 556 U.S. at 676)]. The Sixth Circuit has consistently refused to recognize arguments raised initially in a reply brief. *See Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003); *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("Since defendant was deprived of an opportunity to address the issue by plaintiff's failure to raise this issue in his original brief, we will consider the issue waived."); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("We generally will not hear issues raised for the first time in a reply brief."). Reply briefs are designed for a moving party to *reply* to a response brief, not provide the moving party a second chance to file the initial motion. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Because Plaintiff was unable to respond to this new argument, the Court will not consider the argument. *Id.*

### IV. <u>CONCLUSION</u>

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendant's Motion to Dismiss [DE 14] is **DENIED AS MOOT**.

(2) Defendant's Motion to Dismiss [DE 20] is **DENIED**.

Copies to:     Counsel of record